Judge Mills
delivered the opinion.
The appellee filed his bill in chancery to be relieved against an adverse certificate and eider grant. The certifi *595 cate against which he craves relief, is posterior in date to his own, and therefore need not be noticed. Both certificates and entries were made under an act of assembly of this state, entitled “An act for settling and improving the vacant lands of this commonwealth.” 2 Litt. 420.
The claim of the appellee, which presents the main question, is based on a certificate in the following words, to wit:
u Warren county, set November court. 1801.
111 do hereby certijy, that Joseph Fisher is entitied to four hundred acres of land, bv virtue of his having taken up and improved the same, agreeable to an act of assembly for settling vacant lands in this state; to wit: Joseph Fisher enters four hundred acres of land lying on the northwest side of big Barren river; beginning on the southwest coiner of David Rice’s land, beginning on a black jack, running northeastwardly with his line till it strikes the widow Mitchel’s line; thence binding on her line, to run as the law directs for quantity.”
An entry on this certificate was made with the surveyor of the county, on the 7th May, 1808, containing precisely the same calls with the certificate, and therefore need not be recited.
This claim having been assigned to the appellee, it was surveyed and carried into grant in his own name. The court below sustained the equity of the appellee and gave relief; from which decree this appeal is prayed.
On the l3t and 26ih of August, 1799, Jane ¡Vlitchel had two surveys made in her own name, adjoining each other. The one claimed by the appellee, as his locative object, is in her name as assignee of another person, and the adjoining one in her own right. This additional circumstance of the claim being derivative, cannot, we conceive, affect the call in the appellee’s entry ; because it was s* ill Jane Mitchel’s survey, and her having obtained the claim by assigi ment, and its being afterv» ards surveyed in her name, ought to answer the call of the adjoining locator, although she has emitted to state how she derived the claim. These two surveys are each in a square, adjoining each other, the full length of one line, and each the quantity of 200 acres, and the one in the individual right of Jane Mitchel, is placed behind the one she claims as as-signee with regard to the appellee’s entry, if he is to commence at Rice’s corner and extend agreeably to his calls to *596 Jane Milchel’s line. It is abundantly proved, that Jane Mitchel was better known by tbe name “widow Mitchel*?' than she was by her Christian name, Jane; and that at the date of her surveys, and afterwards, till some time subsequent to the certificate of the appellee, she resided on tbe 200 acres which she claimed as assignee, and kept a public bouse on the main road leading through tbe country. From these circumstances, the notoriety of her survey, according to repeated decisions of this court, ought to be presumed, even if other testimony as to that notoriety was silent. But this is not tbe fact. For if we cast from tbe record tire testimony of two witnesses, whose characters have been vitally and successfully assailed, we still have enough to shew that her surveys were in fact notorious, and that it was well understood, by those acquainted in tbe neighborhood, that she bad such surveys there, and many knew the precise position of her corners and lines. We are told in the location of the appellee, that he is to run northeastwardly from or along Rice’s line to tbe widow Mitchel. This call being reversed, would enable aoy person to understand tbe relative position of Rice with regard to the widow Milchel’s and assist in determining which claim of Rice was intended. Rice had several different surveys made in July, 1800. But all of them, except two, are situated at tbe distance of three or four miles al least from the widow Mitchel’s surveys, which totally destroys the idea, that they could have been intended as a locative object in conjunction with her claims, in locating the quantity of four huudred acres. Those, then, which are in her neighborhood alone, can set up any claim, to fill the calls of tbe location in queslion. It is not shewn that any person resided on these surveys; but we conceive that they are shewn to be notorious in proof, and could, at the date of appellee’s certificate, have been found on using reasonable diligence. These twe surveys of Rice contain each two hundred acres, in a square, adjoining each other, the length of one line; and the course of one of them approaches within about forty poles of the side of Jane Mitchel, assignee of Smith. There can be no reasonable doubt which of these surveys of David Rice was intended. For if the appellee is to begin at tbe sout west angle of the northwestern survey of Rice, pursuant to his calls, be has no blackjack as a corner, which actually exists at tbe proper earner of the southeastern suryey, and to comply withtfe *597 next call of running “northeastwardly with Rice's line.” he must run with the division line between Rice’s two sor-yeys, and so include one of them in his Own claim. Be* sides running with this line of Bice northeastwardly, he never could louph, by extending his course, either of the widow Mitchei’s surveys. These considerations repel the idea that the northwestern survey was intended, and renders it certain that the southeastern one is designed. We there* fore conceive that the calls of the appellee’s location for Rice’s and Mitchei’s surveys, are good, and well supported in proofj and must be sustained unless some other objection taken to this location shall prove fatal to it.
A survey actually bounded and resided on by the owner, will be presumed to be notorious, and furnishes a good locative call for n adjoining entry.
When an entry calls to adjoin the survey of an Other, when that o her has various surveys in the same vi-cinitv, the selection of thf survey to be adjoined will be governed by superior ap itude of one to the other calls of the append-ant entry
pecting vacant lands of th's'cotn-warrant is’** dispensed with, »nd a ^''^ade'end patent issu’d ™ payment* of the stafe r
It has been contended in argument that the act under which this claim was located, as well as at least ODe more amendatory act, required that a warrant should be obtain edfrom tbe register, reciting the location, before any entry was made, with the surveyor, or survey executed ; and that the want of such warrant, must be fatal to this claim. It is true that the original act did require such warrant, and the payment of the state price before such warrant could be obtained. Tbe entry with the surveyor must be made according to this warrant, and the warrant was the only authority to the surveyor. If these directions of this act were left to govern this case, it would be hard to remove the objection. But by tbe first section of an act passed on the 23d Dec. 1803, 3 Lilt. 132, it is provided ⅛4 that any person who has heretofore obtained, or shall hereafter receive, a certificate for land, by virtue of aq act entitled “ an act for settling and improving the vacant lands, of this commonwealth,” it shall and may be lawful for any such person, to enter and survey the whole or any part ef tbe land called for in his or her certificate, and such survey shall be recorded in the surveyor’s office ; and on a plat and certificate of such survey being returned to the register’s office, and the money, with ihe interest due thereon to the state being paid, a patent shall issue as in at her cases.”
This act evidently dispenses with a warrant, and authorizes a survey on the certificate. Anterior to that time the warrant was not only an authority to survey, but evidence of the price being discharged. Tbe authority to survey, by this act, is complete and the payment of the state price indulged till afterwards, and then a patent was allowed without a warrant. The warrant is not dispensed *598 with in express words ; but the effect of the act recited, dispenses with it without such express direction, and no warrant after that period could he necessary.
A survey made with-®ut *he.®u' owner" of'an entry, does not merge an rate^aiTinja-rytoasubse-quentsurvey: survej°made by authority of the owner oí a part of bridge the owner’s right to survey the whole, provided the sur-veyofa part ® ofthe whole.
The certi-ftcstle of die county court of applicants right, is con elusive agnst the com’ith, and all subsequent. purchaser» from her.
It is also objected to this claim that two surveys were executed upon ft before that on which the patent e'mana-ted, the first dated May 12, 1808, and the second on the 12th June, 1812. As to the first of these surveys, it is proved that it was done under the direction of a friend of {jie owneri intending it for him, without any authority, 3nd the survey was disclaimed by the owner, so soon as he was informed of it, and he never acquiesced in that survey. This having been done without authority from the owner, either express or implied, and not having received his subsequent approbation, it cannot bind or affect him as was decided by this court in the case of Calloway’s heirs vs. Webb, 1 Marsh. 129. As to the second survey, the waot of authority from the houlcr or owner is not shewn or proved, and we must presume it to have been made by the propcr officer under his direction. But this surver is only 1 ' .. . , , «. * * fnade for part of the quantity, and as far as we can ascertain from the record the whole of it is included in the last survey on which the patent issued. So far then, as the 0l'1* survey went, the patent includes the ground, together with some additional laud to make up the quantity. According to the principles settled by this court in the case of Estill, &c. vs. Hart’s heirs, Har. 567, this second survey of part, cannot affect the Iasi for the whole quantity ; and the whole objection, founded on former surveys, utterly fails.
It is objected in the answers that the assignor of the ap-pellee was not such a settler as was entitled to the claim. To this it may be answered, that the certificate of the county court is conclusive against the commonwealth, and all subsequent purchasers from it, as to the right of (lie holder of the certificate, and cannot be questioned. The appellants having derived their claim from the government, posterior to the date of the appellees certificate, have no right to enquire into this matter.
The validity then, of the appellees entry, must rest oa the questions, 1st. Whether it can be surveyed stall by its calls ? and 2dly. If it can be surveyed, what is the true mode ? Beginning at Rice’s corner, as before determined, and running it with Rice’s line and continuing the course to the widow Mitchell’s line, is a length of 214. *599 poles ; turning then with MitcheU’s line, an acute angle of the survey is foimed and Mitchell’s line is continued only seventy-six poles. To run from that point to the beginning would include but a small portion of the quantity and that no part of the land in controversy. To extend Mitchell’s line, and also another line parallel thereto, until the quantity was included by a line at right angles, would be giving a construction to the entry which the law forbids, by declaring “that, no location or survey which shall be made in virtue of this act, shall, in its length, exceed its breadth more than one third, unless interrupted by prior claims only.” No prior claims are shewn here to authorize the extension, and the locator has forbid it by directing us to run “ as the law directsit is evident then that this latter call must fix the figure of the survey, or it cannot be done at all.
By the aefap-propriaáng the vacant lands of the com’wlth, an actual personal residence is necessary, and the county courts possess a povyer to grant certificates to such persons only — a set. tlement by proxy will not do, and the certificate holder is bound to shew the place of his actual settlement, if it be called for as a locative object, or conduces to give figure to the survey.
The meaning of such a call never has been investigated by this court, as far as we have been able to ascertain ; and great doubts are entertained whether it ought to be regarded. The law directed the locator, himself, to fix the position of bis claim, “ by a special location, describing, as accurately as may be, the land contemplated to be included.” It would then be a decision of considerable indulgence, which would allow the locator to shift this duty from his shoulders, and refer back to the law, the shape of his location.
Give it the most favorable construction we can, we cannot say that it means more than the court below has said, to wit: “ to include his settlement.” “To include his improvement” is the expression of that court, but we use settle,Mat, as most proper to comply with the law. It will be seen by an examination of the act, under which this claim originated, that nothing Ies3 than an actual, personal, settlement and residence would comply with it, as is evident from the expressions, “ provided that he Or she actually settles or resides thereon.” Another proviso prohibits those who had located under former laws from obtaining only an addition of two hundred acres; and the seventh section requires an actual and bona fide settlement, and two years residence, before the emanation of the grant, and prohibited during this period arty alienation. From these expressions it is evident that settlement, by substitution, could not comply with the law. In this respect this act is different from the act of 1T79, which gave birth *600 to settlements and pre emptions, under the laws of Virginia. That act, see I Litt. 395, after the expressions, “ have really and bona fide settled themselves or their families,” adds the words, “ or at his, her, or their charge, have settled others,'” which authorizes the performance of the service by proxy. No such expressions are employed in the act in question, and no such practice was intended to be indulged by the legislature. To include the spot where Fisher, the origioal holder, settled himself, and not thé spot wheré he settled others, or set them at labor for him, must be intended bv his call “ as the law directs,” if he intends any thing. Such a spot has not been shewn or identified in proof. To substitute such proof be has shewn an improvement made by another individual for biro, before the date of the certificate; but this is not his settlement, and to take it as a locative call intended by the expressions, •“ as the law directs,” would be including that which the law did not direct, and actually disallowed. — ~ Proof, however, is attempted and made, that this is the very improvement for which the county court granted the certificate. Such proof must, however, be disregarded as incompetent. If the certificate is conclusive against the opposite party as to every fact necessary to its validity, and that of actual settlement among the rest, it ought to be equally so against the appellee, and he ought not to be permitted to prove that the county court violated the law by granting him an improper certificate for the purpose of sustaining his claim against his adversary, who on this subject must be silent. But if such evidence is admissible to prove that the county court granted the certificate for services which the law did not recognize, and such is to be taken as the fact, ought subsequent locators, upon reading this location, and upon giving to the expression “ as the law directs” the same meaning as including Fisher’s improvement, be compelled also to take knowledge that the county court had violated the law and granted an improper certificate, for an improvement made by substitution, and that this was the improvement intended ? This-would be giving great latitude to the expression, “ as the law directs,” and make it mean to include objects legal and illegal, which cannot be indulged.
It may be supposed that this reasoning will, in effect, open the decision of the county courts as to such certifi-Hites. Such a consequence, however, is not intended.— *601 Two purposes may be answered by the settlement oftbe party ; first, to entitle him to the claim, and secondly, it may be used as a locative object. If it is used for the latter purpose it m ist, like all oth^r calls, be identified aud shewn. Suppose the call in this c ise to be express, “ to include bis settlement,” would the appellee not be compelled to identify such place ? Could it be pretended that proof of a spot, where another settled, would answer the purpose ? Suppose a certifícale with such call only, without any other, could it be sustained without shewing the place ? In such case it must be taken as true, that such place existed ; — oay, carry the doctrine farther» and sav that the certificate itself must be taken as conclusive, that the improvement-was wi bin a claim, which had other locative objects ; yet if the position of the improvement, or settlement, could aff-ct the figure of the claim bv the calls, its position must be identified and shewn. Improvements are frequently called for in village rights, Under the laws of Virginia, altho’ they were of no other use to such claims than other locative objects. In such case, however, they must be proved as such. The same may be said as to actual settlements under the same taws. If the place of settlement is adopted as a locative object, it must be shewn to exist as described, and cannot be supplied by any other object, except where the holder or one at his charge, actually settled. 1 here is then a difference be! ween enquiring into the true situation and character of an improvement, when used as a locative object, and impeaching the claim because it was granted for an improper St-Mlemenr aud residence. To give then the most laiitudi-m us construction to the cal) in question, we conceive that the posiiiou or object intended by it is not shewn or proved, aud that for tnis cause the claim of the appellee, as to the land in controversy, must be held invalid, and that the decree below must be reversed with costs, and directions given to that court to dissolve the injunction and dismiss the bill with costs.
Pope tor appellant, Bibb for appellee*